IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Charles B., | ) |
|     *Plaintiff*, | ) ) ) No. 22 C 50383 |
| v. | ) ) Magistrate Judge Lisa A. Jensen |
| Martin O'Malley, Commissioner of Social Security,[1] | ) ) ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Charles B. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his application for disability insurance benefits.[2] For the reasons set forth below, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

**BACKGROUND**

On July 13, 2020, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of October 17, 2019, because of depression, back injury, spinal cord stimulator placement, arthritis, post-traumatic stress disorder (PTSD), seizure disorder, herniated discs, tendonitis, tremors, and sciatic nerve pain. R. 179. A hearing was held before an administrative law judge (ALJ) on March 8, 2022. R. 41. The ALJ issued a written decision on March 24, 2022, finding that Plaintiff was not disabled under the applicable sections of the Social Security Act,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.

and, thus, not entitled to benefits. R. 13-36. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar, cervical, and thoracic spine, status-post spinal cord stimulator implantation; failed back syndrome; seizure disorder; history of right shoulder partial thickness tear and degenerative joint disease; history of left clavicle fracture; posttraumatic stress disorder (PTSD); depression; and anxiety. R. 15. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 16. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b), except he can stand and/or walk for a total of two hours in an eight-hour workday and he can sit for about six hours an eight-hour workday. The claimant cannot climb ladders, ropes, or scaffolds but he can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crouch, crawl, and balance. The claimant can have no exposure to hazards, including dangerous moving machinery, unprotected heights, or commercial vehicles, as well as occasional exposure to extreme cold and wetness. He can occasionally reach overhead and frequently reach in all other directions bilaterally. The claimant can have occasional exposure to vibration. He can understand, remember, and carry out instructions for simple, routine, repetitive tasks with sufficient persistence, concentration, or pace to timely and appropriately complete such tasks. He can make simple work-related decisions and he can have occasional interaction with supervisors and coworkers, with only brief and superficial interaction with the general public.

R. 20-21. The ALJ determined that Plaintiff was unable to perform any past relevant work, but through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. R. 34. After the Appeals Council denied Plaintiff's request for review on October 3, 2022, R. 5, Plaintiff filed this instant action. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If

supported by substantial evidence, the Commissioner's factual findings are conclusive. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) not addressing Plaintiff's claim to be classified as a "worn out worker"; (2) rendering an ambiguous RFC, which negatively impacted the vocational expert's testimony; and (3) improperly discounting the treating medical source opinions. *See generally* Dkt. 15. The Court addresses each argument in turn.

**I.     PLAINTIFF CANNOT BE CONSIDERED A WORN-OUT WORKER.**

Plaintiff first argues that the ALJ did not address Plaintiff's allegation that he should be classified as a worn-out worker, and that the ALJ's "failure to even acknowledge the argument is legal error warranting remand." Dkt. 15 at 4. The Commissioner argues that Plaintiff waived this argument because he did not raise it at the administrative hearing. Even if not waived, the Commissioner argues, the ALJ's failure to address this argument is harmless error because the record plainly establishes that Plaintiff cannot satisfy the requirements of the worn-out worker rule.

> The "worn-out-worker" rule applies to a claimant who has:
>
>> no more than a marginal education (see § 404.1564) and work experience of 35 years or more during which [he] did only arduous unskilled physical labor, and [he was] not working and [is] no longer able to do this kind of work because of a severe impairment(s) (see §§ 404.1520(c), 404.1521, and 404.1523).

20 C.F.R. § 404.1562(a). Marginal education is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. [The Commissioner] generally consider[s] that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2). Marginal education is one level above "illiteracy" and one level below "limited education." 20 C.F.R. § 404.1564(b). Limited education is defined as having "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). Completion of grades seven through eleven generally constitutes "limited education." *Id.* Finally, a high school education is defined as "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. [An ALJ] generally consider[s] that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4).

Here, after Plaintiff testified that he had earned his GED, the ALJ found that Plaintiff's education category is a high school education. R. 34, 48. While Plaintiff's GED is not dispositive of his education level, it does establish the presumption that he has achieved a high school education. *See* DI 25001.001, Medical–Vocational Quick Reference Guide and DI 25015.005, Age as a Vocational Factor (stating that a GED certificate is considered in the category of "[f]ormal schooling completed at a level of 12th grade and above" and that "we usually, consider a GED certificate to be in this category."); *Pint v. Astrue*, No. CIV. 12-0108 RHK/JJG, 2013 WL 869386,

at *3 (D. Minn. Feb. 11, 2013), *report and recommendation adopted sub nom. Pint v. Colvin*, No. CIV. 12-108 RHK/JJG, 2013 WL 848552 (D. Minn. Mar. 7, 2013). Plaintiff does not proffer evidence to rebut the presumption that he has a high school level education, and thus, he does not meet the educational requirements to be considered a worn-out worker. But, as the Commissioner points out, even if Plaintiff had only a minimal educational level, there is insufficient evidence in the record to support the conclusion that Plaintiff worked for 35 years in only arduous, unskilled jobs. A review of the periods listed in Plaintiff's "Work History Report" indicates a maximum of 17 years of work between March 2000 and October 2017. R. 273. Moreover, even if the ALJ credited Plaintiff's testimony that he began working part time as a roofer in 1989 and continued this work until 2017 (R. 52), the 28-year period falls short of the regulation's 35-years-or-greater requirement. 20 C.F.R. § 404.1562(a).

The Court will not remand a case to the ALJ for further specification when it can predict with great confidence that the ALJ will reach the same result. *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011). Because Plaintiff cannot satisfy the requirements to be considered a worn-out worker, the Court can predict with great confidence that the result on remand would be the same. As such, remand is not required.

II. **THE ALJ DID NOT ERR IN HER RFC DETERMINATION.**

Next, Plaintiff appears to take issue with the ALJ's RFC determination, but his argument here is so underdeveloped that it is unclear what error Plaintiff is alleging. Such threadbare arguments could be deemed forfeited entirely. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("'It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.'") (quoting *Beard v. Whitley*

*County REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988)). But, in the interest of completeness, the Court addresses Plaintiff's purported arguments.

First, Plaintiff argues that the ALJ's RFC determination is "unclear" and "incorrect according to the statute." Dkt. 15 at 4-5. The Court disagrees. The ALJ determined that Plaintiff could perform light exertional work as defined in 20 C.F.R. § 404.1567(b), except that he could only stand/walk for a total of two hours in an eight-hour workday. R. 20-21. Put differently, the ALJ determined that Plaintiff could perform the lifting/carrying and sitting requirements of light work, but that he was limited to only two hours total of standing/walking. And though Plaintiff contends that the RFC determination is incorrect according to "the statute," nothing in 20 C.F.R. § 404.1567 prohibits an ALJ from constructing an RFC that falls between two exertional categories. *See* SSR 83-12, 1983 WL 31253, at \*4-5 (clarifying adjudicative policies regarding Disability Determination wherein "a claimant or beneficiary has exertional limitations within a range of work or between ranges of work"). As such, the Court declines to find the ALJ's RFC determination "incorrect according to the statute."

Plaintiff next contends that the ALJ "created by definition a sedentary RFC," and states that "the ALJ's determination and whether the work is classified as light or sedentary is not harmless error because the [vocational expert] had to rely on this RFC when testifying." Dkt. 15 at 5. But, it is unclear how the ALJ starting her hypothetical with a sedentary exertional capacity would have "ultimately impact[ed] [the vocational expert's] final conclusion." Dkt. 15 at 5.

When a claimant's exertional limitations fall between two exertional ranges of work, an ALJ is encouraged to seek assistance from a vocational expert. *See* SSR 83-12, 1983 WL 31253, at \*3. An ALJ must include in her hypothetical questions "'all of a claimant's limitations supported by the medical record.'" *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022) (quoting

*Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021)). Here, the ALJ relied on the state agency's medical consultants in determining Plaintiff's exertional restrictions, and the ALJ's assessment of Plaintiff's exertional restrictions is consistent with and supported by the state agency physicians' opinions. R. 142-45; R. 155-57. During the hearing, the ALJ consulted with the vocational expert, and posed hypothetical questions that detailed specific capabilities in lifting/carrying and standing/walking. R. 73-78. While the vocational expert stated during the hearing that the hypothetical limitation for standing/walking was more consistent with sedentary positions than light positions, she identified several sedentary positions that an individual with Plaintiff's background and RFC would be able to perform. R. 74-78. The vocational expert testified that, although the hypothetical postural and environmental limitations that the ALJ posed did not appear in the Dictionary of Occupational Titles, her "testimony regarding those aspects" was based on her training, knowledge, education, and experience. R. 78. Similarly, the ALJ considered the vocational expert's testimony that light jobs would not be available to Plaintiff based on the limitations in his RFC. R. 35. Accordingly, the ALJ applied the medical-vocational guidelines for sedentary work, concluded that rules 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.21 and 201.28 would direct a finding of "not disabled," and relied on the vocational expert's uncontradicted testimony in concluding that Plaintiff still remained capable of performing a significant number of sedentary jobs with his background and RFC. R. 35. Thus, although the ALJ's RFC determination fell between exertional levels, she did exactly what the regulations advise an ALJ to do in such situations: solicit assistance from a vocational expert and pose hypothetical questions that detail limitations unique to a claimant. Plaintiff has not shown how the ALJ's RFC determination is not supported by substantial evidence, nor how he is harmed by the ALJ's reliance on the vocational expert's testimony in rendering an RFC determination. As such, the Court affirms the ALJ's RFC

determination, as phrased. *E.g.*, *Deborah M.*, 994 F.3d at 788 (reversal is warranted only if the record compels a contrary result); *Haas v. Comm'r of Soc. Sec.*, No. 4:16-CV-11817, 2017 WL 3836086, at *6 (E.D. Mich. Aug. 1, 2017), *report and recommendation adopted*, No. CV 16-11817, 2017 WL 3780087 (E.D. Mich. Aug. 31, 2017) (affirming an ALJ's RFC determination where the plaintiff failed to show how modifying the hypothetical posed to the vocational expert would have changed the outcome of the case).

**III.     THE ALJ DID NOT IMPROPERLY DISCOUNT MEDICAL OPINIONS.**

Lastly, Plaintiff argues that the ALJ relied on outdated state agency physician opinions, and, that the ALJ improperly discounted the treating medical source opinions "without proper analysis or explanation." Dkt. 15 at 6. Plaintiff states that numerous records were added to the file after the state agency physicians rendered their opinions.

Here, in constructing Plaintiff's RFC, the ALJ relied on the expertise of the state agency's medical consultants. State agency reviewer Dr. Gotanco reviewed the initial-level evidence in June 2021, and opined that Plaintiff was capable of lifting/carrying 20 pounds occasionally, 10 pounds frequently, standing/walking for 2 hours, and sitting for 6 hours during a workday, that Plaintiff could never climb ladders/ropes/scaffolds but was unlimited in climbing ramps/stairs, and that he should avoid concentrated exposure to hazards. R. 143-45. In October 2021, stage agency reviewers Dr. Madala and Dr. Fritz reviewed the reconsideration-level evidence, and affirmed Dr. Gotanco's opinions, except Dr. Madala recommended reducing Plaintiff to only occasionally climbing of ramps/stairs. R. 155-56. The ALJ noted that both consultants reviewed Plaintiff's medical treatment notes for most of the period under adjudication and the consultative examinations, and that the stage agency reviewers supported their opinions by citing the record and specific medical findings. R. 30. The ALJ thus found the opinions of Drs. Gotanco and Madala

generally persuasive, and subsequently incorporated their recommended restrictions into her assessment of Plaintiff's RFC. R. 30. Drs. Fritz and Madala reviewed records through September 30, 2021, rendered their opinions in October 2021, and the ALJ issued her written opinion on March 24, 2022.  R. 36; R. 151, 157. A review of the record reveals that a handful of records were added to the file after Drs. Madala and Fritz rendered their opinions,[3] but Plaintiff does not identify anything in the subsequent medical treatment notes that renders the state agency physicians' opinions outdated, or what information in the subsequent medical treatment notes would require resubmission to the state agency physicians for review. As a result, the Court declines to conclude that the state agency physicians relied on outdated records. *Durham*, 53 F.4th at 1095 (rejecting plaintiff's argument that additional records rendered the medical opinions stale because the results "d[id] not reveal a worsening of [plaintiff's] condition such that resubmission to a medical expert was required); *Deborah M.*, 994 F.3d at 788 (reversal is warranted only if the record compels a contrary result).

Next, the Court finds Plaintiff's argument that the ALJ improperly discounted the treating physicians' opinions without merit. Because Plaintiff filed his claim in 2019, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must articulate "how persuasive [she] find[s]

---

[3] Some of the records received after September 30, 2021 include: 1) treatment notes from Plaintiff's primary care physician, dated 11/01/2021, which state that Plaintiff was in for a follow-up for his medication (R. 741-46); 2) treatment notes from Plaintiff's treating psychiatrist, dated 11/30/2021, which state that Plaintiff "is doing well" (R. 840); and 3) medical assessments from Plaintiff's treating physicians, which the ALJ ultimately discounted because the opinions were not supported and lacked credibility (R. 31-33).

all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ clearly explained her reasons for discounting the opinions from Plaintiff's providers. First, the ALJ discounted the opinion of Plaintiff's treating therapist, Ms. Kroll, because Ms. Kroll's opinion was not valuable or persuasive under the regulations, and because her statements were inconsistent with the treatment notes from Plaintiff's treating psychiatrist. R. 31. The ALJ further noted that Ms. Kroll's opinion described "very few specific functional limitations" that would help the ALJ construct an RFC, but to the extent that Ms. Kroll endorsed significant work limitations, the ALJ found this inconsistent with notes from Plaintiff's treating psychiatrist that consistently indicated Plaintiff was "doing well" on his medication. R. 31.

Next, the ALJ explained that she did not credit Plaintiff's primary care physician, Dr. Ross, because his opinion was not consistent with the overall record, including Plaintiff's testimony. The ALJ stated that Dr. Ross "provided generally extreme limitations, namely in exertional ability, but merely listed as support symptoms and some objective abnormalities, without further support or

explanation of how these medical findings translated into the noted functional limitations," and "the extent of these limitations are not persuasive because the doctor does not adequately support with treatment notes or explanation these extensive restrictions, nor are they otherwise consistent with other evidence." R. 32. For example, the ALJ noted that Dr. Ross stated that Plaintiff could sit for a maximum of 20 minutes (R. 866), but Plaintiff testified that he could sit up to 40 minutes. R. 54.

Finally, the ALJ explained that she did not credit the opinion of Plaintiff's treating psychiatrist, Dr. Montes, because Dr. Montes endorsed extreme mental restrictions, including no useful ability to function in most areas, and this opinion was "not persuasive because it is not sufficiently supported by explanation and the doctor's treatment notes." R. 33. For example, while Dr. Montes rendered an opinion that Plaintiff had "no useful ability to function" as to his ability to maintain socially appropriate behavior (R. 873), the ALJ pointed to psychiatric treatment notes that Dr. Montes had written three months earlier, which indicated that Plaintiff was "doing well," using his medication consistently, experiencing no side effects, "not irritable. No acting out," and that Plaintiff exhibited normal cognition and "good memory for recent and past events." R. 33; R. 840-41.

In sum, the ALJ evaluated the treating physicians' opinions and explained that she discounted the treating physicians' opinions because the opinions were not supported or consistent with the medical record overall. Thus, because the ALJ assessed and explained her reasons for discounting the treating physicians' opinions, her opinion is supported by substantial evidence, and a remand is not warranted. *Laura P. v. Comm'r of Soc. Sec.*, No. 22 C 7188, 2023 WL 5227413, at *5 (N.D. Ill. Aug. 15, 2023) (declining to reverse an ALJ's decision to discount an

opinion from a plaintiff's treating physician because the ALJ "properly assessed and explicated supportability and consistency" when discounting the opinion).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: March 19, 2024      By: *Lisa A. J*
                              Lisa A. Jensen
                              United States Magistrate Judge